# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI LEIGH BARHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-18-151-G ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Lori Leigh Barham brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB and SSI applications on June 5, 2015. R. 12, 183-95. In both applications, Plaintiff alleged a disability onset date of February 28, 2015. R. 12, 183, 190. Following denial of her application initially and on reconsideration, a

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

1

hearing was held before an administrative law judge ("ALJ") on September 7, 2016. R. 29-49, 107-11, 112-15, 120-22, 123-25. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 45-48. The ALJ issued an unfavorable decision on January 31, 2017. R. 9-23.

The Commissioner of Social Security uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 14. At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of: degenerative disc disease, status post lumbar fusion; obesity; chronic pain syndrome; migraines; hidradenitis suppurativa; bipolar disorder; major depressive disorder; and attention deficit disorder. R. 14-18. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 18-19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 19-22. The ALJ found that Plaintiff had the residual functional capacity to

> lift and carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. [Plaintiff] can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] cannot climb ladders, ropes, or scaffolds. [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive tasks. [Plaintiff] can relate to supervisors and co-workers on a superficial work basis. [Plaintiff] can respond to usual work situations. [Plaintiff] can have occasional contact with the general public.

2

R. 19. At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. R. 22.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 22-23. Relying upon the VE's testimony regarding the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ found that Plaintiff could perform the sedentary, unskilled occupations of table worker, document preparer, and call-out operator, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 22-23.

Plaintiff's request for review by the SSA Appeals Council was denied on December 26, 2017, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)

(internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff alleges that the ALJ erred by: (1) failing to consider the limitations stemming from Plaintiff's hidradenitis suppurativa, and not properly evaluating whether Plaintiff's condition met or equaled Listing 8.06; (2) utilizing "boilerplate" language in evaluating the opinions of nonexamining state-agency physicians; and (3) assigning insufficient weight to the opinion of Plaintiff's treating physician, Dwayne Roush, MD. *See* Pl.'s Br. (Doc. 15) at 5-11.

A. *Listing 8.06*

Plaintiff describes her stage III hidradenitis suppurativa, a condition that involves the bilateral axillae and groin region, as a "painful long-term skin disease with infected lesions." *Id.* at 9. In finding Plaintiff's hidradenitis suppurativa to be a severe impairment at step two, the ALJ stated:

> Notes at Exhibit B15F show that [Plaintiff] had a history of Stage III hidradenitis suppurativa, a chronic skin disease, of the bilateral axillae and groin, since the age of sixteen. She was evaluated in January 2016 for consideration of radiation treatment for her condition.

4

R. 16 (citing R. 783-969 (Ex. B15F)). At step three, the ALJ did not discuss Listing 8.06 or evaluate whether Plaintiff's condition met the requirements of that Listing. R. 18-19.

In making a step-three finding, "the ALJ determines whether the claimant's impairment 'is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity.'" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). For Plaintiff's condition to meet Listing 8.06, she must have hidradenitis suppurativa with "extensive skin lesions involving both axillae, both inguinal areas or the perineum" "that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpart P app. 1, § 8.06 (2016).

The ALJ accepted without comment evidence reflecting that Plaintiff's condition is chronic and that it involves the bilateral axillae (armpits) and inguinal (groin) area. R. 16. And Defendant does not dispute that Plaintiff's condition would meet the 3-month requirement and that the lesions involve the specified areas. *See* Def.'s Br. (Doc. No. 19) at 20.

Thus, the only remaining question in determining whether Listing 8.06 was met is whether Plaintiff's skin lesions were "extensive." Listing 8.00 defines "extensive skin lesions" as those lesions

> that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

5

> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. pt. 404, subpart P app. 1, § 8.00(C)(1)(a)-(c).

In Plaintiff's argument concerning the effects of her hidradenitis suppurativa, Plaintiff contends that her condition

> involved bilateral axillae, (arm pit), and groin. [Plaintiff] used a combination of Humira, Remicade infusions and antibiotics, (Tr. 562, 791). In 2015 there were no open lesions, but she had scaring that stemmed from a prior flare, (Tr. 567, 571). Then in 2016 the condition worsened. The lesions were painful and drained periodically, (Tr. 807). She underwent 15 radiation treatments, (Tr. 791). [Plaintiff's] condition did last more than 3 months as required by Listing 8.06. Indeed, it began in 2014. [Plaintiff] did not have radiation until 2016. During this entire time span the claimant suffered with multiple and persistent lesions with both drainage and pain.

Pl.'s Br. at 9. Thus, Plaintiff has cited to evidence that reasonably could support a finding that Plaintiff's condition presented "extensive skin lesions that result in a very serious limitation." 20 C.F.R. pt. 404, subpart P app. 1, § 8.00(C)(1).

Defendant argues that there is an interpretation of the record that would lead a finding that Plaintiff's condition does not meet the requirements of Listing 8.06. *See* Def.'s Br. at 20-21. The ALJ did not adopt such an interpretation in the hearing decision, however, and "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006) ("The Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the

6

case. If [the claimant] does not meet the capsule definition [of the Listing], then the ALJ must make that determination in the first instance." (citing *Clifton*, 79 F.3d at 1009-10).

In short, the ALJ's decision does not adequately address whether Plaintiff met the "extensive skin lesions" criterion of Listing 8.06, and this Court may not independently supply the missing analysis. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks omitted); *see Clifton*, 79 F.3d at 1009 (holding that ALJ's "bare conclusion [was] beyond meaningful judicial review" and that ALJ was required to "explain why he found that [the claimant] was not disabled at step three").

B. *Other Arguments*

The Court agrees that the ALJ's failure to properly evaluate Plaintiff's condition under Listing 8.06 requires remand and therefore does not address Plaintiff's remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

IT IS SO ORDERED this 29th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge